**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| The Libman Company, | Case No. 1:17-CV-05090 |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | |
| SSI Products, LLC, d/b/a EverClean Products | (1) **TRADE DRESS AND TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| Defendant. | (2) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |

(1) **TRADE DRESS AND TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**
(2) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**
(3) **TRADE DRESS AND TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**
(4) **TRADEMARK INFRINGEMENT IN VIOALATION FO 15 15 U.S.C. § 1114(1);**
(5) **TRADE DRESS DILUTION IN VIOLATION OF 765 ILCS 1036/65;**
(6) **DECEPTIVE TRADE PRACTICES IN VIOLATION OF 815 ILCS 510/2;**
(7) **DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF 815 ILCS 505/2;**
(8) **COMMON LAW TRADE DRESS INFRINGEMENT; AND**
(9) **COMMON LAW UNFAIR COMPETITION AND DILUTION**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, The Libman Company ("Libman"), for its complaint against Defendant SSI Products, LLC, d/b/a EverClean Products ("SSI" or "Defendant"), based on knowledge and on information and belief as appropriate, alleges as follows:

1

**The Parties**

1.     Libman is a company organized and existing under the laws of the State of Illinois with a principal place of business at 220 North Sheldon, Arcola, IL 61910.

2.     On information and belief, SSI is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 7108 Twin Oaks Ct., Mansfield, TX 76063.

**Jurisdiction and Venue**

3.     This is an action for trade dress infringement, unfair competition and false designation of origin, and trade dress dilution. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"); the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65; the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; the Illinois Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; and both federal and state common law, including the law of Illinois.

4.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.     Defendant has and continues to advertise, offer for sale, and sell infringing cleaning tools to customers, including customers in the State of Illinois and in this District.

6.     This Court may exercise personal jurisdiction over Defendant based upon Defendant's contacts with this forum. On information and belief, these contacts include at least Defendant's tortious acts giving rise to this lawsuit within this District and Defendant's regular and intentional conduct of business here. For example, on information and belief and as discussed in more detail below, Defendant has advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote offer for sale, sell, and distribute infringing

products to customers and potential customers in Illinois and in this District, including that Defendant's principal web site reaches into Illinois, including this District. On information and belief, Defendant's tortious acts giving rise to this lawsuit are also occurring in this District, and Defendant's customers and potential customers reside in the State of Illinois, including this District. For instance, Defendant had a booth and participated in the 2017 International Home + Housewares (IHA) Show in Chicago, Illinois, where many of its products, including the infringing products described below, were at least marketed and offered for sale, as illustrated by Exhibit 1 to this Complaint, which reflects Defendant's registration and participation in the 2017 IHA show.

7. On further information and belief, Defendant benefits financially from the Illinois market, including, for example, through sales of Defendant's infringing products that ultimately occur in Illinois, including in this District. Further, on information and belief, Defendant has sold infringing products for distribution throughout the United States (through, for example, Internet listings), with the expectation that they would be purchased by consumers in Illinois, including this district.

8. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

**General Allegations – Libman's Business and Intellectual Property**

9. For over a century, Libman has continuously engaged in the development, manufacture, and sale of the high quality and distinctive mops, brooms, brushes, and cleaning tools. Founded in the Chicago area, Libman has grown substantially over the years, extensively and continuously promoting and using its designs throughout the United States and the world. Libman's designs are unique, distinctive, and non-functional. These designs have also acquired

3

substantial secondary meaning in the marketplace and became famous. As discussed in more detail below, Libman owns trademark and trade dress rights relating to the source identifying features of its cleaning tools.

10.     For example, Libman owns Federal Trademark Registration No. 4,058,487 ("the '487 Registration") for the color green as applied to the handle of cleaning tools. A copy of the '487 Registration is attached as Exhibit 2 and an example image is provided in Figure 1. The '487 Registration has become incontestable, and therefore constitutes conclusive evidence of the validity of the trademark, Libman's ownership thereof, and Libman's exclusive right to use the trademark. The trademark of the '487 Registration adds to the distinctiveness of the overall appearance of Libman products to consumers. Libman has also invested substantial resources in the design, development, manufacture, advertising and marketing of its cleaning tools embodying the '487 Registration.

11.     The trademark of the '487 Registration has also acquired substantial secondary meaning in the marketplace and has become famous to consumers and the general public, in Illinois and the United States, at least through Libman's extensive use and promotion of the trademark, and the substantial sales of products including the trademark.



**Figure 1**

12.     Additionally, to help provide immediate consumer recognition, Libman and its predecessors have purposely marketed and sold cleaning tools in a green and white color scheme since at least 1974. Libman therefore has trade dress rights in the design and appearance of the combination of green and white color scheme of the handles of its cleaning tools. This scheme is hereafter referred to as "the Color Trade Dress." The Color Trade Dress adds to the distinctiveness of the overall appearance of Libman products to consumers. Libman has invested substantial resources in the design, development, manufacture, advertising, and marketing of its cleaning tools embodying the Color Trade Dress. A sample of Libman's various cleaning tools utilizing the Color Trade Dress is shown below in Figure 2. The Color Trade Dress is distinctive and nonfunctional, and identifies to consumers the origin of the product is Libman. The Color Trade Dress has also acquired substantial secondary meaning in the marketplace and became famous to consumers and the general public, in Illinois and the United States, at least through Libman's extensive use and promotion of the trade dress, and the substantial sales of products including the trade dress.



**Figure 2: Exemplary Libman Products**

**"Big Brush Scrubber"**
**Product #1090**

**"All-purpose Kitchen Brush"**
**Product #1043**

**"Big Job Kitchen Brush"**
**Product #1042**

**"Bottle Brush"**
**Product #39**

**"Brass Pot Brush"**
**Product #47**

**"Heavy Duty Scrub Brush"**
**Product #54**



**"Angled Toilet Bowl
Brush"
Product #1020**

**"Designer Bowl Brush"
Product #22**

**"Precision Angle® Broom"
Product #201**

**"Traditional Corn Broom"
Product #101**

**"Shaped Duster Brush"
Product #231**

**"Smooth Sweep Push
Broom"
Product #1140**



**"Scrubster Mop™"**
**Product #3103**

**"Cotton Deck Mop"**
**Product #88**

**"Wonder® Mop"**
**Product #2000**

**"Gator Mop®"**
**Product #3020**

**"Microfiber Wet & Dry**
**Mop"Product #117**

**"Nitty Gritty® Roller Mop"**
**Product #2010**

13.     In addition, Libman's Wonder® Mops (example shown above) have a distinctive

and non-functional overall look, as well as distinctive and non-functional features that identify to

consumers that the origin of the mops is Libman. Libman has invested substantial resources in the design, development, manufacture, advertising and marketing of its Wonder® Mops. As a result of at least Libman's continuous and exclusive use of the design of its Wonder® Mops, Libman's marketing, advertising, and sales of the mops, and the highly valuable goodwill and secondary meaning acquired as a result, Libman owns trade dress rights in the designs and appearances of the Wonder® Mops which consumers have come to uniquely associate with Libman.

14.     Libman has trade dress rights in the overall look, design, and appearance of the Wonder® Mop, which include but are not limited to: (1) the white and green color combination and color contrast of components of the Wonder® Mop, including the handle cap, the handle, the grip, and wringer cup, and where the handle cap, grip, and wringer cup are a white color and the handle is a green color; (2) the design, appearance, placement, and shape of the grip, including the design, appearance, placement, and concave exterior shape of the grip; (3) the design, appearance, placement, and shape the wringer cup, including the design and appearance of the vertical ribs along the bottom of the wringer cup; (4) the use of the similar protrusions along the length of the grip and the top of the wringer cup; and (5) the design, appearance, placement, and shape of the handle cap, including the design, appearance, placement, and shape of the circular protrusions on the handle cap, and the design, appearance, placement, and shape of the bore in the handle cap and the exterior surfaces defining the bore, including the curves and tapers thereof. These features, alone or in combination, including the overall look and appearance of the Wonder® Mop, are collectively hereafter referred to as "the Wonder® Mop Trade Dress."

15.     Libman's federal and common law trademark rights in the '487 Registration, the Color Trade Dress, the Wonder® Mop Trade Dress are collectively hereafter referred to as the

"the Libman Marks." Libman will refer to its cleaning tools bearing one or more of the Libman Marks as "the Libman Products."

16.     The Libman Products have enjoyed widespread, substantial sales over many years through national food, drug, and mass merchandising retailers that include Wal-Mart®, Lowe's®, Home Depot®, and Walgreens®. The Libman Products are also sold in many other automotive, hardware, grocery, specialty, and arts and crafts stores across Illinois and the United States. The Libman Products are frequently offered in multiple departments of individual stores, and have been consistently featured in advertising, at trade shows, on the Internet, and in in-store displays. The Libman Products have also received substantial unsolicited and third party publicity and consumer attention, and have developed hard-earned consumer goodwill over many years.

17.     As a result of Libman and its predecessors' extensive, exclusive, continuous, and substantial use, advertising, and sales of the Libman Products and the publicity and attention that has been paid to the Libman Products and the Libman Marks, the Libman Marks have acquired valuable goodwill and substantial secondary meaning, and have become famous in the marketplace as consumers and the general public, in Illinois and the United States, have come to uniquely associate each of the Libman Marks as a source identifier of Libman. The Libman Marks and Libman Products have also received substantial consumer and third-party attention based on this goodwill, secondary meaning, and fame. The Libman Marks are also non-functional, as illustrated at least by the many alternative designs that are available, and because the Libman Marks and features thereof are not essential to the use or purpose of the Libman Products, as many other colors, shapes, etc. are available to competitors that provide similar quality of goods and manufacturing costs.

### General Allegations – Defendant's Unfair and Unlawful Activities

18.     Defendant has and is continuing to purposefully advertise, promote, offer for sale, distribute, making, and/or import into the United States cleaning tools that infringe on, dilute, and/or otherwise violate Libman's intellectual property rights. For example, Defendant has misappropriated the goodwill and secondary meaning in both the Color Trade Dress and the Wonder® Mop Trade Dress in their products, and therefore infringes and dilutes both trade dresses. Defendant also offers numerous products with handles that infringe and dilute the '487 Registration. On information and belief, a sample of Defendant's various cleaning tools infringing, diluting, or otherwise violating Libman's intellectual property is shown below in Figure 3.



| Figure 3: Exemplary Infringing Products |
| --- |

Extension Cobweb Duster

Microfiber Extension Duster

Microfiber Counter Duster



19.     As can be seen above, multiple products by the Defendant purposefully imitate the overall look and appearance of Libman's cleaning tools as well as the Color Trade Dress, relying on a green and white color scheme for the cleaning tools. Further, multiple products by the Defendant, including at least the examples of the Extension Cobweb Duster, Microfiber Spray Mop, and Cone Wringer Mop provided above, include the green handle protected under the '487 Registration. The Cone Wringer Mop also purposefully imitates the overall look and appearance of Libman's Wonder® Mops as well as individual elements of the Wonder® Mop Trade Dress, and the arbitrary combination of the elements of the Wonder® Mop Trade Dress.

20.     Libman refers to the collection of Defendant's infringing products as "the Infringing Products."

21.     Additionally, Defendant's Infringing Products are offered in the same channels of trade as the Libman Products, and are promoted in the same channels of trade, such as the IHA Trade Show. Defendant's Infringing Products are marketed and sold using confusingly similar imitations of the Libman Marks. Defendant's actions infringe and dilute Libman's trademark and trade dress rights, constitute unfair competition and false designation of origin, and common law trademark infringement.

22.     Libman and its predecessors used the Libman Marks extensively and continuously before Defendant began selling, offering to sell, distributing, or advertising the Infringing Products. Moreover, the Libman Marks have acquired secondary meaning and became famous in both the United States and in Illinois before Defendant commenced its use of these trade dresses.

23.     Libman never authorized Defendant to sell, offer to sell, distribute, or advertise the Infringing Products.

24.      Defendant engages in substantial activity in Illinois and this District. Examples of Defendant's activity include: (i) Defendant's Infringing Products may be purchased online in Illinois (*e.g.*, through https://www.amazon.com/Everclean-7140-0-Wringer-Green-White/dp/B01H6JR50K) and, on information and belief, have been purchased by consumers in the United States, Illinois, and this District; (ii) Defendant's principal website (http://everclean-products.com/, which includes active functionality) reaches into Illinois and Illinois consumers; and (iii) Defendant attended the 2017 IHA Show, advertising at least some of the Infringing Products. Indeed, during this show, a representative of Defendant informed a Libman representative that Defendant was aware of, at least, Libman's Wonder® Mop product design

(that bears all of the Libman Marks) and that this was considered in relation to Defendant's infringing and diluting Cone Wringer Mop product.

25.     On information and belief – as evidenced at least by the facts and circumstances alleged above – Defendant's infringements have been intentional and willful, in bad faith, and manifest a deliberate and knowing disregard of Libman's intellectual property rights, making this an exceptional case under 15 U.S.C. § 1117 and entitling Libman to, among other things, Defendant's profits, actual damages, enhanced damages, and attorneys' fees under at least 15 U.S.C. § 1117, 765 ILCS 1036/65, and 815 ILCS 505/10a.

**Count I:**
**Trade Dress Infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

26.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 25, inclusive, and incorporates them by reference herein.

27.     Based on the activities described above, including, Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing at least Libman's rights in the Color Trade Dress, the Wonder® Mop Trade Dress, and the '487 Registration.  Defendant's use of the Libman Marks and/or colorable imitations thereof is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with Libman and as to the origin, sponsorship, or approval of the Infringing Products.

28.     The Libman Marks are entitled to protection under federal law. These marks use unique, distinctive, and non-functional designs. Libman and its predecessors have extensively and continuously promoted and used the Libman Marks in the United States. Through that extensive and continuous use, these marks have become a well-known indicator of the origin and quality of the Libman Products. The Libman Marks have also acquired substantial secondary

14

meaning in the marketplace. Moreover, these marks acquired secondary meaning before Defendant commenced its use of the marks and colorable imitations thereof in connection with the Infringing Products.

29.     Defendant's use of the Libman Marks, including colorable imitations thereof, is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Libman.

30.     Defendant's use of the Libman Marks, including colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

31.     On information and belief, Defendant's use of the Libman Marks, including colorable imitations thereof, has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and by Defendant's continuing disregard for Libman's intellectual property rights.

32.     Libman is entitled to injunctive relief, and Libman is entitled to recover at least Defendant's profits, Libman's actual damages, enhanced damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count II:
### Unfair Competition and False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

33.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 32, above, inclusive, and incorporates them by reference herein.

34. Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products, in direct competition with Libman, violate Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition, at least because the Defendant has obtained an unfair advantage as compared to Libman, through its use of the Libman Marks and/or colorable imitations thereof, to falsely designate the origin, affiliation, or sponsorship of the Infringing Products.

35. The Libman Marks are entitled to protection under federal law. These marks use unique, distinctive, and non-functional designs. The Libman Marks have acquired distinctiveness through Libman and its predecessors' extensive and continuous promotion and use of the Libman Marks in the United States and in Illinois. Through that extensive and continuous use, the Libman Marks have become a well-known indicator of the origin and quality of the Libman Products, and are widely recognized by the general consuming public as a designation of the source of the Libman Products. Moreover, the Libman Marks acquired secondary meaning before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

36. Defendant's use of the Libman Marks and colorable imitations thereof constitutes a false designation of origin that is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Libman.

37. Defendant's use of the Libman Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for

16

which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

38.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and by the Defendant's continuing disregard for Libman's intellectual property rights.

39.     Libman is entitled to injunctive relief, and Libman is also entitled to recover at least Defendant's profits, Libman's actual damages, enhanced damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count III:
### Trade Dress and Trademark Dilution under
### Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

40.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 39 above, inclusive, and incorporates them by reference herein.

41.     Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products, in direct competition with Libman, violate Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes dilution of the Libman Marks.

42.     The Libman Marks are entitled to protection under federal law. These marks use unique, distinctive, and non-functional designs. The Libman Marks have acquired distinctiveness through Libman and its predecessors' extensive and continuous promotion and use of the Libman Marks in the United States and in Illinois. Through that extensive and continuous use, the Libman Marks have become a famous, well-known indicator of the origin and quality of the Libman Products, and are widely recognized by the general consuming public as a designation of

the source of the Libman Products. Moreover, the Libman Marks acquired this secondary meaning before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

43.     Defendant's use of the Libman Marks and colorable imitations thereof is likely to cause, and has caused, dilution of the famous Libman Marks at least by eroding the public's exclusive identification of the famous Libman Marks with Libman, by lessening the capacity of the famous Libman Marks to identify and distinguish the Libman Products, by associating the Libman Marks with products of inferior quality and impairing the distinctiveness of the famous Libman Marks.

44.     Defendant's use of the Libman Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

45.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and by the Defendant's continuing disregard for Libman's intellectual property rights.

46.     Libman is entitled to injunctive relief, and Libman is also entitled to recover at least Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count IV:**
**Trademark Infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

47.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 46 above, inclusive, and incorporates them by reference herein.

48.     Based on the activities described above, including, for example, Defendant's using Libman's federally registered trademark protected by the '487 Registration and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the infringing products, Defendant has infringed Libman's trademark under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Defendant's use of Libman's trademark and/or colorable imitations thereof is likely to cause confusion, cause mistake, or deceive.

49.     Defendant's use of Libman's trademark of the '487 Registration and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Libman's trademark, Libman's trade dresses, Libman's products, and Libman.

50.     On information and belief, Defendant's use of Libman's trademark of the '487 Registration and/or colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by Defendant's unlawful use of Libman's trademark in an effort to sell the infringing products and by Defendant's continuing disregard for Libman's rights.

51.     Libman is entitled to injunctive relief, and Libman is entitled to recover at least Defendant's profits, Libman's actual damages, enhanced damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114(1), 1116, and 1117.

**Count V:**
**Trade Dress Dilution under 765 ILCS 1036/65 of the Illinois Trademark**
**Registration and Protection Act**

52.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 51 above, inclusive, and incorporates them by reference herein.

53.     Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products, in direct competition with Libman, violate 765 ILCS 1036/65 of the Illinois Trademark Registration and Protection Act.

54.      The Libman Marks are entitled to protection under Illinois law. These marks use unique, distinctive, and non-functional designs. Libman has extensively and continuously promoted and used the Libman Marks for years in the United States and in the State of Illinois. Through that extensive and continuous use, the Libman Marks have become famous and well-known indicators of the origin and quality of the Libman Products in the United States and in the State of Illinois. The Libman Marks are widely recognized by the public throughout Illinois as a designation of the source of the Libman Products. The Libman Marks also acquired substantial secondary meaning in the marketplace, including in the State of Illinois. Moreover, the Libman Marks have acquired secondary meaning and became famous before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

55.     Defendant's use of the Libman Marks and colorable imitations thereof is likely to cause, and has caused, dilution of the famous Libman Marks at least by eroding the public's exclusive identification of the famous Libman Marks with Libman, by lessening the capacity of the famous Libman Marks to identify and distinguish the Libman Products, by associating the

Libman Marks with products of inferior quality and impairing the distinctiveness of the famous Libman Mark.

56.     Defendant's use of the Libman Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

57.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and by the Defendant's continuing disregard for Libman's intellectual property rights.

58.     Libman is entitled to injunctive relief, and Libman is also entitled to recover at least Defendant's profits, damages, enhanced profits and damages, and reasonable attorney fees under 765 ILCS 1036/65.

### Count VI:
### Violation of the Illinois Uniform Deceptive Trade Practices Act

59.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 58 above, inclusive, and incorporates them by reference herein.

60.     Through the activities described above, Defendant has engaged in deceptive trade practices as defined in the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., by causing a likelihood of confusion as to the source, sponsorship, or approval of Libman and Libman's products with Defendant and its products.

61.     The Libman Marks are entitled to protection under Illinois law. These marks use unique, distinctive, and non-functional designs. The Libman Marks have acquired distinctiveness

21

through Libman and its predecessors' extensive and continuous promotion and use of the Libman Marks in the United States and in Illinois. Through that extensive and continuous use, the Libman Marks have become a famous, well-known indicator of the origin and quality of the Libman Products, and are widely recognized by the general consuming public as a designation of the source of the Libman Products. The Libman Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the Libman Marks acquired this secondary meaning and became famous before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

62.     Defendant's use of the Libman Marks and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

63.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and by the Defendant's continuing disregard for Libman's intellectual property rights.

64.     Libman is entitled to injunctive relief and recover costs and reasonable attorney fees under 815 ILCS 510/3.

## Count VII:
## Violation of the Illinois Fraud and Deceptive Business Practice Act

65.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 64 above, inclusive, and incorporates them by reference herein.

22

66. Through the activities described above, Defendant has engaged in unfair methods of competition and unfair and deceptive acts, including conduct likely to confuse consumers as to the origin of the Libman Products and Defendant's Infringing Products. Defendant's activities violate the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

67. Defendant's activities alleged above constitute deceptive trade practices as defined in the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and for that reason also violate the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

68. Defendant's deceptive business practices involve conduct addressed to the market generally and implicate consumer protection concerns because the deceptive practices have caused and continue to cause injury to consumers. Unless this Court restrains said acts, Defendant's deceptive business practices will continue and the public will continue to suffer great and irreparable injury.

69. Defendant's use of the Libman Marks and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

70. On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, by Defendant's purposeful change of its trade dress to imitate the Libman Marks and by the Defendant's continuing disregard for Libman's intellectual property rights.

71. Libman is entitled to injunctive relief and to recover at least Defendants' damages, costs, and reasonable attorney fees under at least 815 ILCS 505/10a.

## Count VIII:
## <u>Common Law Trademark Infringement</u>

72.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 71 above, inclusive, and incorporates them by reference herein.

73.     Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products, in direct competition with Libman, constitute common law trademark infringement, at least because the Defendant's use of the Libman Marks and/or colorable imitations thereof is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of the Infringing Products.

74.     The Libman Marks are entitled to protection under both federal and common law. These marks use unique, distinctive, and non-functional designs. Libman and its predecessors have extensively and continuously promoted and used the Libman Marks in the United States and the State of Illinois. Through that extensive and continuous use, the Libman Marks have become a well-known indicator of the origin and quality of the Libman Products. The Libman Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the Libman Marks acquired this secondary meaning before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

75.     Defendant's use of the Libman Marks and colorable imitations thereof is likely to cause consumer confusion as to origin, sponsorship, and/or affiliation of the Infringing Products, at least by creating the false and misleading impression that Infringing Products are manufactured by, authorized by, or otherwise associated with Libman.

76.     Defendant's use of the Libman Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for

24

which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

77.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and the Defendant's continuing disregard for Libman's intellectual property rights.

78.     Libman is entitled to injunctive relief and recovery of at least Libman's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

**Count IX:**
**Common Law Unfair Competition and Dilution**

79.     Libman re-alleges each and every allegation set forth in paragraphs 1 through 78 above, inclusive, and incorporates them by reference herein.

80.     Defendant's offers to sell, sales, distribution, and/or advertisement of the Infringing Products, in direct competition with Libman, constitute common law unfair competition, dilution, palming-off, and passing-off against Libman, and unjust enrichment of the Defendant's goods by simulating the Libman Marks in an intentional and calculated manner under the common law of Illinois.

81.     The Libman Marks are entitled to protection under both federal and common law. These marks use unique, distinctive, and non-functional designs. Libman and its predecessors have extensively and continuously promoted and used the Libman Marks in the United States and the State of Illinois. Through that extensive and continuous use, the Libman Marks have become famous, well-known indicators of the origin and quality of the Libman Products, and is widely recognized by the general consuming public as a designation of the source of the Libman

Products. The Libman Marks have also acquired substantial secondary meaning in the marketplace. Moreover, the Libman Marks became famous and acquired this secondary meaning before Defendant commenced its use of the Libman Marks and colorable imitations thereof in connection with the Infringing Products.

82.     Defendant's use of the Libman Marks and colorable imitations thereof is likely to cause consumer confusion as to origin, sponsorship, and/or affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Libman.

83.     Defendant's use of the Libman Marks and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Libman for which Libman has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Libman Marks.

84.     On information and belief, Defendant's use of the Libman Marks and colorable imitations thereof has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the Infringing Products to the Libman Marks, as demonstrated in Figures 2 and 3 above, and the Defendant's continuing disregard for Libman's intellectual property rights.

85.     Libman is entitled to injunctive relief and recovery of at least Libman's damages, Defendant's profits, punitive damages, costs, and reasonable attorney fees.

**DEMAND FOR JURY TRIAL**

Plaintiff the Libman Company hereby demands a jury trial on all issues so triable as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

## **Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Defendant has (i) willfully infringed the Libman Marks in violation of § 1125(a) of Title 15 of the United States Code; (ii) willfully engaged in unfair competition and false designation of origin of the Libman Marks in violation of § 1125(a) of Title 15 of the United States Code; (iii) willfully engaged in dilution of the Libman Marks in violation of § 1125(c) of Title 15 of the United States Code; (iv) willfully infringed the trademark protected by '487 Registration in violation of § 1114(1) of Title 15 of the United States Code;  (v) willfully engaged in dilution of the Libman Marks in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65; (vi) willfully violated the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1 *et seq.*; (vii) willfully violated the Illinois Fraud and Deceptive Business Practice Act 815 ILCS 505/2; (viii) willfully violated Libman's common law rights in the Libman Marks; and (ix) willfully engaged in common law unfair competition and dilution;

2.     A permanent injunction against further infringement and dilution of the Libman Marks and further acts of unfair competition by Defendant, and each of its agents, employees, servants, attorneys, successors and assignees, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of the Libman Marks, pursuant to at least 15 U.S.C. § 1116, 765 ILCS 1036/65, 815 ILCS 505/10a, and 815 ILCS 510/3;

3.     An Order directing Defendant to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

4.     An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products; (ii) any other products that use a copy, reproduction, or colorable imitation of the Libman Marks in Defendant's possession or control; (iii) all means of making the Infringing Products in Defendant's possession, custody, or control; and (iv) all advertising materials related to the Infringing Products in Defendant's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.     An Order directing Defendant to publish a public notice providing proper attribution of the Libman Marks to Libman, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.     An Order barring importation of Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to 15 U.S.C. § 1125(b);

7.     An award of Defendant's profits, Libman's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, 1117, 765 ILCS 1036/65 and 815 ILCS 505/10a; and

8.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,
BANNER & WITCOFF, LTD.

By: */s/* Richard S. Stockton
     Richard S. Stockton
     Eric J. Hamp
     Zachary L. Getzelman
     Ten South Wacker Drive, Suite 3000
     Chicago, IL 60606-7407
     (312) 463-5000
     (312) 463-5001 fax

rstockton@bannerwitcoff.com
ehamp@bannerwitcoff.com
zgetzelman@bannerwitcoff.com

**ATTORNEYS FOR PLAINTIFF THE LIBMAN COMPANY**